UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ERNEST L. JACKSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:04-CV-107 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ALSTOM POWER, INC., ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendant ALSTOM Power, Inc. ("Defendant") (Court File No. 36). Plaintiffs Ernest Jackson, Jack Bryden, Terrell Swafford, James McCamy, Fred Pratt, Charles Varnell, Richard Geren, James Branham, Jesse Vann, Jerry Griffith, and Robert Cummings (collectively "Plaintiffs") filed this action in state court alleging state law causes of action for fraudulent misrepresentation and negligent misrepresentation. Defendants removed the case from state court to this court. Defendant has filed a brief (Court File No. 37) and various exhibits (Court File No. 36, Exh. A- N thereto) in support of its motion. Plaintiffs filed a response, memorandum, and exhibits in opposition (Court File Nos. 38 and Exh. A-O thereto, Court File No. 39), and Defendant has filed a reply and further exhibits (Court File No. 42 and Exh. A- O thereto). After carefully considering the parties' arguments and the applicable law, the Court, for the following reasons, will **GRANT** Defendant's motion for summary judgment.

I.      **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded

jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.  RELEVANT FACTS

Plaintiffs are eleven former long-term, salaried employees of Defendant, a foreign corporation headquartered in Paris, France. Defendant's facility in Chattanooga, Tennessee, where the plaintiffs worked, designs and manufactures equipment for the power industry. Defendant has adopted an Involuntary Separation Pay Plan for Reductions in Salaried Workforce ("Plan") which provides mandatory severance benefits for employees who are laid off (*see* Court File No. 7, Exh. C). However, retirees are not eligible to receive severance benefits under the Plan (*see id.*, p. 4). When conducting reductions in force, Defendant would often do so by offering to pay employees an amount equal to the benefit they would be entitled to under the Plan if they would agree to take early retirement in lieu of an actual lay off, hereinafter referred to as "voluntary separation pay" (Court File No. 38, Exh. A, Deposition of Ernest Jackson ("Jackson Depo.") pp. 21-22; Court File No. 36, Exh. J, Deposition of James Branham ("Branham Depo."), pp. 16-17; Court File No. 36, Exh. N, Deposition of Charles Varnell ("Varnell Depo.") pp. 18-19, 32).

In early 2003, Defendant was suffering severe financial problems (Court File No. 38, Exh. L, Deposition of Robin D. Sentell ("Sentell Depo.") p. 8). Management held meetings with employees in March 2003 to discuss the restructuring and financial difficulties of the company, and also what would happen to salaried employees' pension plans, which were underfunded, should the company go bankrupt (Sentell Depo. at 10-11). Defendant explained to employees the alternatives

3

of electing early retirement and taking a lump-sum payment from their pension plans, or staying with the company with the risk of losing a significant portion of their pensions if the company went bankrupt and the Pension Benefit Guaranty Company took them over (Court File No. 38, Exh. D, Deposition of James T. McCamy ("McCamy Depo.") p. 7; Branham Depo. at 28).

Various members of Defendant's management also indicated individually to Plaintiffs in Spring and early Summer 2003 voluntary separation pay would not be offered to them as it had been to some employees in the past (Jackson Depo. at 16, 23-24; Court File No. 38, Exh. B, Deposition of Jack C. Bryden ("Bryden Depo.") pp. 27-28, 42; McCamy Depo. at 8, 16; Court File No. 38, Exh. I, Deposition of Jesse T. Vann ("Vann Depo."), pp. 5, 8; Court File No. 38, Exh. K, Deposition of Robert Cummings ("Cummings Depo.") pp. 8, 9, 10; Court File No. 38, Exh. G, Deposition of Richard Geren ("Geren Depo.") p. 10; Branham Depo. at 16-17; Varnell Depo. at 18-19, 35).

Based upon these representations, Plaintiffs allege they all chose to take early retirement by the end of July 2003, except for Plaintiff James Branham ("Plaintiff Branham"), who retired in January 2004 (Court File No. 24; Branham Depo. at 7). Plaintiffs now claim Defendant all along had planned to and did in fact offer voluntary separation pay on a select basis to similarly situated employees on the condition those employees keep such offers a secret (Court File No. 24). It is undisputed Defendant did offer voluntary separation pay to encourage some employees to retire in Fall 2003.

Defendant states its management discussed offering voluntary separation pay in Spring 2003, but decided to wait to make a decision about offering it until after it finished a union contract negotiation, settled uncertainty about the company's financial future, and determined how many employees would retire on their own without being offered this incentive (Court File No. 38, Exh.

4

M, Deposition of David Breckinridge ("Breckinridge Depo.") pp. 19-20; Sentell Depo. at 24). Sometime in August and September 2003, after the union contract negotiations had concluded, the French government announced a financial bailout of the company, and the pace of voluntary retirements had slowed significantly, Defendant decided to offer voluntary separation pay to some employees to encourage further retirements (Breckinridge Depo at 26; Sentell Depo. at 27). Because this incentive was offered only to some individual employees, rather than to all employees, Defendant requested the employees who received the offer keep it a secret (*Id*. Breckinridge Depo at 36-37). No salaried employee who retired voluntarily or involuntarily actually received separation pay until September 30, 2003 (Court File No. 42, Exh. M, Affidavit of Ruth A. Tate ("Tate Aff.") ¶¶ 5, 6).

Plaintiffs filed suit in Hamilton County (Tennessee) Circuit Court on March 2, 2004, asserting claims for fraudulent misrepresentation and negligent misrepresentation (Court File No. 1, Complaint). On April 14, 2004, Defendant removed the case to this Court on the basis of both federal question jurisdiction and the diversity of citizenship among the parties (Court File No. 1, Notice of Removal)[1]. Plaintiffs amended their complaint on January 1, 2005 to add several additional plaintiffs (*see* Court File No. 24).

### III. DISCUSSION

Plaintiffs allege claims of fraudulent and negligent misrepresentation and Defendant has

---

[1] Although Defendant asserted federal question jurisdiction under the Employee Retirement Security Income Act of 1974, 29 U.S.C. §§ 1001 et seq., ("ERISA") the Court concluded there was no evidence the facts of this case concerned a "plan" under ERISA, therefore federal question jurisdiction was lacking. However, since there was complete diversity of the parties, jurisdiction was present under diversity of citizenship.

moved for summary judgment on both claims. The Court will assess each of these claims in turn.

### A. Fraudulent Misrepresentation

In order to prevail on their claim of fraudulent or intentional misrepresentation, Plaintiffs must prove: (1) the defendant made an intentional misrepresentation relating to an existing or past fact, or, if the claim is based on promissory fraud, embodying a promise of future action without the present intention to carry out the promise; (2) the representation related to a material fact; (3) the representation was made either with knowledge of its falsity, without belief in its truth, or with reckless disregard for its truth; (4) the plaintiff reasonably relied on the misrepresented material facts; and (5) the plaintiff suffered a detriment from this reliance. *Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001); *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (*quoting Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)); *see also First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991).

Plaintiffs allege Defendant's misrepresentations were its statements voluntary separation pay would not be offered to employees taking early retirement in lieu of an actual layoff in the near future, when actually "the option to offer separation benefits was still on the table pending resolution of certain issues" (Court File No. 39 at 3).

Defendant in its motion for summary judgment argues Plaintiffs cannot show it made any "misrepresentation." Plaintiffs first allege Defendant misrepresented an existing or past fact (the existence of a reduction in force plan including the option to offer voluntary separation pay at some point). The Court agrees with Defendant, Plaintiffs have not shown they can prove Defendant made any misrepresentation. Plaintiffs have not shown, at the time Defendant made statements to them regarding the unavailability of voluntary separation pay, Defendant had a reduction in force plan

6

including the option to offer voluntary separation pay at some point. Defendant's employees testified in depositions they did not decide to offer voluntary separation benefits to some employees until August 2003, several months <u>after</u> management made statements to Plaintiffs no benefits would be offered, and every plaintiff except Plaintiff Branham had already chosen to retire (Breckinridge Depo. at 26; Sentell Depo. at 27). Plaintiffs have not pointed to any evidence to counter Defendant's employees' testimony on this point, therefore there is no factual dispute on this matter. Plaintiffs' mere allegation Defendant intended to offer voluntary separation benefits all along is not sufficient to overcome Defendant's agents' testimony to the contrary. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Since Defendant had no plan in place to offer voluntary separation pay to some employees at the time it told employees these benefits would not be offered, before the end of July 2003, such statements were not misrepresentations of any existing or past fact.

Plaintiff Branham retired on January 1, 2004 (Branham Depo. at 7), after Defendant decided to offer voluntary separation pay to some employees, but he also cannot point to any misrepresentation made by Defendant. Plaintiff Branham testified in his deposition he originally was told voluntary separation pay was not available to him or, by "innuendo" and "rumors," to others (*Id.* at 16-17). Later, Plaintiff Branham testified, after he heard some employees in his department actually were being offered voluntary separation pay, he again asked a supervisor, Rob Sentell, about the incentive (*Id.* at 18). At that time, Mr. Sentell confirmed voluntary separation pay was being offered to other employees, but explained to him why he did not qualify for it (*Id.* at 17-20). Plaintiff Branham testified he did not believe Mr. Sentell told him anything false or misleading during this meeting (*id.*), so any claim of misrepresentation he is making must relate to the earlier statements addressed above, which Defendant made at a time when it had decided not to offer

7

voluntary separation pay to any employees. Therefore, Plaintiff Branham also cannot point to any misrepresentation of a past or existing fact Defendant made to him.

Alternatively, Plaintiffs allege Defendant made a promise of future action (the promise not to offer any voluntary separation benefits to employees in the near future) without the present intention to carry out the promise. *See Stacks*, 812 S.W.2d at 592. Defendant argues any promise it might have made does not rise to the level of being actionable in promissory fraud because it did not rise to the level of a contract, based on Tennessee caselaw (Court File No. 37, p. 9). The Court need not address that issue. Even assuming this promise was sufficient for an action of promissory fraud, Plaintiffs cannot point to any evidence that would indicate Defendant, at the time it made statements to them about its future intentions not to offer voluntary separation pay, actually had the present intention to offer those benefits in the near future. Defendant's employee David Breckinridge testified in reference to an April 2003 discussion, although "there was a possibility [that voluntary separation pay would be offered in the near future] . . . We just decided that that time was the wrong time" (Breckinridge Depo. at 19[2], *see also* Breckinridge Depo. at 23-24, 26; Sentell Depo. at 24, 27). Again, Plaintiffs' mere allegations Defendant had no intent not to offer voluntary separation pay in the near future when it made such statements are not sufficient to overcome Defendant's agents' testimony on this point. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

Plaintiffs' claims seem to hinge on the theory that once Defendant told them it had no plans

---

[2]The Court would note Plaintiffs cited to the testimony of another of Defendant's agents, Jeffrey Sizer, in arguing Defendant was always planning to offer voluntary separation pay (Court File No. 39, p. 3), but the Court is unable to discern from the short portion of his testimony attached to Plaintiffs' response to what time period he was referring. Because the issues in this case are time-sensitive, the Court cannot rely on any statements Mr. Sizer made without the proper temporal context for such statement.

8

to offer voluntary separation benefits, it should not be allowed to change its mind. Unfortunately for Plaintiffs, a claim of misrepresentation requires some sort of *present* falsehood, either as to a past or present fact, or an intent to perform on a present promise in the future. Because Plaintiffs cannot point to any misrepresentation, they have not met their burden on an essential element of their intentional misrepresentation claim, and the Court will **GRANT** summary judgment in favor of Defendant on this claim.

### B. Negligent Misrepresentation

Tennessee has adopted Section 552 of the Restatement (Second) of Torts "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991); *see also Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997). Liability in tort will result, regardless of a lack of contractual privity between the plaintiff and defendant, when:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
> (2) the defendant supplies faulty information meant to guide others in their business transactions; and
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
> (4) the plaintiff justifiably relies upon the information.

*Robinson*, 952 S.W.2d at 427 (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991); *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995)).

For the reasons explained *supra*, Plaintiffs have not pointed to any "faulty information" Defendant supplied to Plaintiffs, therefore Plaintiffs cannot meet an essential element of their claim for negligent misrepresentation and summary judgment for Defendant is proper. Therefore, the Court will **GRANT** Defendant's motion for summary judgment on this claim as well.

9

**IV. CONCLUSION**

Because Plaintiffs cannot point to any misrepresentation Defendant made to them, they cannot prevail on either of their claims, and the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 36).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**
